# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>SAMSUNG GALAXY S9, S/N: R38K60MTC8R, located<br>at 302 S. MCNEILL STREET, CARTHAGE, NC 28327 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:24MJ172-1

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; SAMSUNG GALAXY S9, S/N: R38K60MTC8R, located at 302 S. MCNEILL STREET, CARTHAGE, NC 28327

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a) and 843(b) | Distribution/Possession with Intent to Distribute Controlled Substances |
| 21 USC 846 | Conspiracy to Distribute Controlled Substances |
| 18 USC 1956 and 1957 | Money Laundering |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jordan Wicks
*Applicant's signature*

Jordan Wicks, U.S. Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____05/06/2024   8:05 am_____

*Judge's signature*

City and state: _____Durham, North Carolina_____

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG GALAXY S9, S/N: R38K60MTC8R, AND APPLE IPHONE WITH GOLD AND PINK CASE, LOCATED AT 302 S. MCNEILL STREET, CARTHAGE, NC 28327 | Case No. ___1:24MJ172-1___ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jordan Wicks, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.     I am a Postal Inspector with the United States Postal Inspection Service (USPIS). I have been so employed since 2018. I am currently assigned to the Contraband Interdiction and Investigation Team and am responsible for the investigation of narcotics, drug trafficking organizations, and money laundering. I have received training by the USPIS, and members of the USPIS, in the investigation of controlled substances or proceeds/payments being transported through the United States. From 2014 to 2018, I was employed as a Special Agent (SA) with the

United States Army Criminal Investigation Division (CID) as a supervisor in the Special Victims Unit. From 2008 to 2014, I was employed as a Detective with the Maplewood Police Department, St. Louis County, Missouri. From 2006 to 2008, I was employed as a Narcotics Detective with the Lincoln County Sheriff's Office, Missouri. From 2001 to 2005, I was a member of Security Forces in the United States Air Force. I have experience and advanced training pertaining to drug related investigations from the USPIS, Drug Enforcement Administration (DEA), U.S. Army, Midwest Counterdrug Training Academy, Missouri Narcotic Officers Association, the Multijurisdictional Counterdrug Task Force, as well as various other federal agencies and organizations.

4.     I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of defendants and witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the use of undercover agents, the use of confidential sources, and the use of court-authorized wire intercepts. This includes investigations of the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to do the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering).

5.     I have been involved in the execution of numerous state and federal search warrants related to drug trafficking investigations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by

2

traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances including through the use of vehicles.

6. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officer, as previously described; (b) what other agents and police officers have advised and related to me about the substance and results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

7. The conclusions and opinions set forth below are based on my experience and training as a law enforcement officer, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation and through conversations with other federal, state, and local law enforcement officers and personnel. The following is not an exhaustive recitation of the facts agents and officers have learned during the course of this investigation, but are the facts that I believe sufficiently establish probable cause. References to law enforcement personnel in this case will generally be referred to as "agents" or "agents/officers," unless specified by name and agency.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. The property to be searched shall be referred to as "**TARGET DEVICE 1**" and "**TARGET DEVICE 2**." **TARGET DEVICE 1** is a Samsung Galaxy S9, with S/N: R38K60MTC8R listed on the back of the device. **TARGET DEVICE 2** is an Apple iPhone with

3

a gold and pink case. A photograph of **TARGET DEVICE 1** and **TARGET DEVICE 2** has been attached to this application for further identification.

      9.    **TARGET DEVICE 1** and **TARGET DEVICE 2** are currently located at the Moore County Sheriff's Office, 302 South McNeill Street, Carthage, North Carolina 28327.

      10.    The applied-for warrant would authorize the forensic examination of **TARGET DEVICE 1** and **TARGET DEVICE 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

      11.    The USPIS, DEA, Homeland Security Investigations (HSI), and the Federal Bureau of Investigation (FBI), are currently investigating the criminal activities of Nicholas Curry, Cody Curry, Carmen Valenzuela, Sammy Soqui, Anthony Lloyd, Crandall Ingram, Shaina Hunt, and other co-conspirators, both known and unknown, regarding violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to do the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering).

      12.    This is an investigation into a Drug Trafficking Organization (DTO) primarily distributing fentanyl, methamphetamine, and cocaine. Shaina Hunt is believed to be a drug distributor who operates within Greensboro, North Carolina, and some of the drugs she obtains are provided by Cody Curry and Sammy Soqui. This DTO has been confirmed to use the USPS to traffic fentanyl, methamphetamine, and cocaine from Arizona to the Middle District of North Carolina. To date, the investigative team has seized approximately 27.5 kilograms of fentanyl, 71.5 kilograms of methamphetamine, and 1 kilogram of cocaine, directly attributable to this DTO. Through electronic surveillance, and on-scene surveillance, investigators have learned that

4

the DTO utilizes residences as "stash houses" and/or locations that receive drug shipments, store drugs, drug proceeds, records, financial information, and digital media utilized by the DTO.

13. In 2017, Nicholas Curry and Cody Curry were arrested in Arizona in the same criminal conspiracy. In that conspiracy, which led to both men being sentenced to state prison, Nicholas Curry and Cody Curry were using package shipping companies to traffic drugs across the United States. They were sentenced to prison and have since been released from custody.

14. In March 2022, the USPIS began to identify suspected drug packages mailed from Phoenix, Arizona, to multiple areas within the MDNC pertaining to this investigation. Although there are multiple addresses known to the USPIS as receiving related packages, four addresses are specific to Shaina Hunt for the purpose of this affidavit. These addresses have been identified as the 5809 Garden Village Court, Apartment H, Greensboro, North Carolina 27410; 226 Davidson Street, Archdale, North Carolina 27263; 1700 Fairview Street, Apartment 164, Greensboro, North Carolina 27405; and 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409. The significance of each address is further described within this affidavit.

15. The USPIS routinely sees that DTOs will mail drugs through the USPS to non-source state locations. The drug proceeds are then mailed back to the source state from where the identified drug packages were mailed. From reviewing USPS business records, the USPIS identified packages suspected to contain drug proceeds mailed from the MDNC to multiple addresses in Phoenix, Arizona. The packages suspected to contain drug proceeds were found to be mailed both before and after suspected and confirmed drug packages were mailed to the MDNC.

16. In or around February 2023, the USPIS began to conduct federal search warrants on packages mailed from the MDNC back to Arizona. To date, the USPIS has conducted eight

5

warrants on these packages, all of which contained bulk U.S. currency, and were in transit to Carmen Valenzuela in Arizona. The combined total of all eight packages is $273,910.00. The search warrants obtained authorized the USPIS to remove the internal packaging materials, replace them with similar or replica materials, and return the packages to the mail stream, thus allowing the USPIS to identify DTO members and money couriers to further identify those involved in the ongoing conspiracy. This led to many latent fingerprints belonging to Nicholas Curry to be recovered from several of these packages confirmed to contain bulk U.S. currency.

17. The investigative team has conducted numerous surveillance operations on packages mailed from Phoenix, Arizona, to addresses within the MDNC. On multiple occasions, Curry and Lloyd have been observed picking up the packages and transporting them to secondary "stash" locations within the MDNC. This includes, but is not limited to, 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409. The USPIS obtained multiple pen register and trap and trace authorizations for both Nicholas Curry's and Cody Curry's known cellular devices.

18. The USPIS identified suspected drug packages being mailed from Arizona to 226 Davidson Street, Archdale, North Carolina 27263; 1700 Fairview Street, Apartment 164, Greensboro, North Carolina 27405; and 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409. A review of USPS business records found that 14 packages originating in Arizona have been mailed to 226 Davidson Street between June 2022 and April 2024. In this same period, five packages were mailed from California to 226 Davidson Street, four from Salinas and one from Beaumont. A review of 1700 Fairview Avenue, Apartment 164, found that one package, which originated from Arizona, had been mailed there in March 2024. The delivery

status of this one package to 1700 Fairview Avenue, Apartment 164, was monitored by a Charter IP address at 5809 Garden Village Court, Apartment H.

19. A review of USPS business records pertaining to 5328 West Market Street, Apartment 12A, found that three packages originating in Arizona were mailed there between December 2023 and January 2024. As noted below, one of the packages was seized in transit to 5328 West Market Street, Apartment 12A, and it was found to contain eight pounds of methamphetamine. This was a known and identified "stash" location of Nicholas Curry and Anthony Lloyd. A Charter IP address, subscribed to Hunt at 5809 Garden Village Court, Apartment H, has inquired into the delivery status of packages to all three addresses, including the package containing eight pounds of methamphetamine.

20. On September 5, 2023, Priority Mail package 9505 5137 1921 3248 4529 30 (Subject Package 1) and Priority Mail package 9505 5137 1921 3248 4529 54 (Subject Package 2) were identified in transit to 5238 Hilltop Road, Apartment M, Jamestown, North Carolina 27282. Both packages were mailed from Tolleson, Arizona. This was a previously identified address and Nicholas Curry and Anthony Lloyd had previously been observed picking up suspected drug packages from this location and transporting them to secondary "stash" locations. Both packages were addressed from "Sean Gasper" with the sender's address of 13511 West Peck Drive, Litchfield Park, Arizona 85340. Both packages were addressed to "Giselle Davies" at 5238 Hilltop Road, Apartment M. A review of law enforcement databases determined both names were fictitious and did not associate with either address.

21. On September 7, 2023, the investigative team conducted surveillance on the delivery of both Subject Package 1 and Subject Package 2. After the packages were delivered by an unwitting USPS Letter Carrier, Nicholas Curry was observed picking up both packages in a

7

rental vehicle. Curry conducted extensive countersurveillance to the point the investigative team made the decision to stop physically following him and rely on geo-location data of his cellular device. The geo-location data placed Curry in the vicinity of 5328 West Market Street. The surveillance team was later able to observe Curry exiting building 12. It was later determined from physical surveillance and coordination with apartment management that a female had rented 5328 West Market Street, Apartment 12A, on behalf of Anthony Lloyd.

22.     On October 10, 2023, the USPIS from North Carolina executed a search warrant at Carmen Valenzuela's residence in Arizona, as it pertains to this investigation. Seized from the residence was $100,500.00, over 26 pounds of fentanyl, 10 pounds of methamphetamine, and USPS shipping materials. The investigation has determined the drugs seized from within Valenzuela's residence were destined to the Middle District of North Carolina.

23.     On January 31, 2024, Priority Mail package 9505 5126 9088 4031 6252 52 (Subject Package 3) was identified in transit to 1700 Fairview Street, Apartment 164. Subject Package 3 was mailed from Phoenix, Arizona. A review of the package found it was addressed from "Zach Bogart 308 E Charleston Ave, Phoenix AZ, 85022," and addressed to "Debra Bogart at 1700 Fairview St, Apt 164, Greensboro, NC 27405." A review of law enforcement databases found that both names were fictitious and did not associate with either address.

24.     On February 1, 2024, Priority Mail package 9505 5110 2621 4031 5900 85 (Subject Package 4) was identified in transit to 5328 West Market Street, Apartment 12A. Subject Package 4 was mailed from Phoenix, Arizona. Subject Package 4 was found to be addressed from "David Roman 15849 N. 9th Ave, Phoenix, AZ 85023," and addressed to "Kaitlin Roman 5238 W. Market St, Apt 12A, Greensboro, NC 27409." A review of law

8

enforcement databases found that both names were fictitious and did not associate with either address.

25.     The USPIS later reviewed business records pertaining to Subject Package 3 and Subject Package 4. Subject Package 3 was mailed 38 minutes after Subject Package 4 was mailed from the exact same USPS Post Office in Phoenix, Arizona. The USPIS routinely sees this in their investigation into those who use the USPS to traffic drugs. This is done in an effort to evade law enforcement detection and prevent the interdiction of drug packages.

26.     On February 2, 2024, the investigative team conducted surveillance on the delivery of Subject Package 3. The investigative team observed an unwitting USPS Letter Carrier deliver Subject Package 3 to the front desk of the apartment complex and not to the listed apartment. The USPIS confirmed that packages delivered to the apartment complex are delivered to the front desk. After delivery, the package is placed inside of a separate package delivery room that requires a residential key to enter. It was confirmed the package delivery room had multiple entrances that could not be watched by the investigative team. Due to not being able to observe this location, the surveillance operation was later terminated. It was confirmed through a review of USPS business records that the Charter IP at 5809 Garden Village Court, Apartment H, was monitoring the delivery status of Subject Package 3. It was also confirmed a T-Mobile device belonging to Cody Curry was also monitoring the delivery status of Subject Package 3. It is my belief that this package contained drugs and a person at 5809 Garden Village Court, Apartment H, believed to be Hunt, was overseeing, and managing the delivery of the drugs delivered to 1700 Fairview Street, Apartment 164.

27.     On February 2, 2024, the Honorable United States Magistrate Judge Joe L. Webster issued a search warrant (1:24MJ40-1) for Subject Package 4. Upon conducting a search

9

of this package, it was found to contain approximately eight pounds of methamphetamine. A review of USPS business records found that the same Charter IP, at 5809 Garden Village Court, Apartment H, inquired into the delivery status of Subject Package 4. Cody Curry was also confirmed to be actively monitoring and inquiring into the delivery status of Subject Package 4. Forty-eight fingerprints of Sammy Soqui were recovered from within this package. Soqui is a known associate of Cody Curry and Nicholas Curry and a previously identified member of this DTO.

28.     On February 2, 2024, the investigative team conducted an enforcement operation on Nicholas Curry in the Middle District of North Carolina. Credible information was received that Nicholas Curry was in Atlanta, Georgia, and would be picking up a large quantity of methamphetamine and transporting it to Greensboro. From monitoring the geo-location data of Nicholas Curry, he was subject to a traffic stop in Randolph County. A search of the vehicle led to the seizure of approximately 22 pounds of methamphetamine.

29.     On February 3, 2024, the USPIS, HSI, and the Greensboro Police Department executed a state search warrant at 5328 West Market Street, Apartment 12A, as it pertains to this ongoing conspiracy investigation. Kimberly Ingram,[1] the paramour of Anthony Lloyd, was inside the apartment. Seized from the residence was one kilogram press, metal stamps for kilograms, digital scales, a blender, spoon, vacuum sealed bags with a visible white substance, and other items of evidence related to drug packaging, distribution, and trafficking. Mail was

---

[1] When law enforcement initially encountered Ingram within the apartment, she identified herself as "Kaitlin Roman." This is significant, as this was the fictitious name listed as the recipient on Subject Package 4. Ingram maintained that she was "Kaitlin Roman" for an extended period until confronted by law enforcement about her true identity.

located inside of 5328 West Market Street, Apartment 12A, which was addressed to Kimberly Ingram at 226 Davidson Street.

30.     On February 25, 2024, Priority Mail package 9505 5123 7586 4055 1406 14 (Subject Package 5) was identified in transit to 226 Davidson Street. Subject Package 5 was addressed from "Hector Garcia 2230 S Wineta St, Phoenix, AZ 85006," and addressed to "Shery Whaley 226 Davidson St, Archdale, NC 27263." A review of available law enforcement databases determined both names were fictitious and did not associate with either address. The Charter IP at 5809 Garden Village Court, Apartment H, was monitoring the delivery status of Subject Package 5 to 226 Davidson Street.

31.     On February 27, 2024, members of the USPIS and DEA conducted surveillance on the delivery of Subject Package 5. After the package was delivered to the front porch, the known resident of 226 Davidson Street arrived home, looked at the package on the porch, and entered the residence without touching Subject Package 5. Approximately 20 minutes later, a Nissan passenger car, North Carolina license plate: FHS-4951, arrived and parked in front of 226 Davidson Street. This vehicle was confirmed to be registered to Shaina Hunt at 5809 Garden Village Court, Apartment H. Hunt was observed exiting the vehicle, retrieving Subject Package 5 from the front porch, and placing it within the Nissan. Hunt then departed the area.

32.     The surveillance team followed Hunt as she traveled to the CVS Pharmacy, located at 10100 S. Main Street, Archdale, North Carolina 27263. Hunt entered the store and departed shortly thereafter. Subject Package 5 remained inside of her vehicle. Hunt was then followed to the Piedmont Place Apartment and parked in front of 5809 Garden Village Court, Apartment H. Hunt was observed retrieving Subject Package 5 from her vehicle and then entered 5809 Garden Village Court, Apartment H, with the package. Several minutes later, a Dodge

11

Ram, North Carolina license plate TR-3103, arrived and parked in front of 5809 Garden Village Court, Apartment H. This vehicle was confirmed to be registered to Evan Dzingle, 6191 Pine Cove Court, Greensboro, North Carolina 27410. The male was observed entering 5809 Garden Village Court, Apartment H. Shortly thereafter, the surveillance operation was terminated.

33.     On March 16, 2024, Priority Mail package 9505 5102 6894 4076 0337 31 (Subject Package 6) was mailed from Salinas, California, to 1700 Fairview Street, Apartment 164. USPS business records reflect Subject Package 6 was addressed from "Joseph macias 348 Williams Rd Salinas Ca 93905," and addressed to "Debra Brown 1700 FairView St apt 164 Greensboro, NC 27405." A review of law enforcement databases was conducted, and both names were found to be fictitious and did not associate with either address. Although law enforcement did not conduct surveillance on Subject Package 6, the Charter IP located at 5809 Garden Village Court, Apartment H, was monitoring delivery status of this package.

34.     On March 22, 2024, Priority Mail package 9505 5128 5588 4080 6090 86 (Subject Package 7) was mailed from Tucson, Arizona, to 226 Davidson Street. USPS business records reflect Subject Package 7 was addressed from "2060 N Center St mesa, AZ 85201 Jhon Hunt," and addressed to "Sheryl Whaley 226 Davidson St Archdale NC 27263." A review of law enforcement databases was conducted, and both names were found to be fictitious and did not associate with either address. Although law enforcement did not conduct surveillance on Subject Package 7, the Charter IP located at 5809 Garden Village Court, Apartment H, was monitoring the delivery status of this package.

35.     On April 4, 2024, Priority Mail package 9505 5107 2362 4092 6778 44 (Subject Package 8) was mailed from Salinas, California, to 226 Davidson Street. No image was available

of this package. However, the Charter IP located within 5809 Garden Village Court, Apartment H, was monitoring the delivery status of Subject Package 8.

36. Over the course of this investigation, multiple subpoenas have been issued to obtain electronic subscriber information, to include cell phone subscriber information, cell phone toll records, and IP subscriber information. The USPS has confirmed digital devices belonging to Cody Curry in Arizona and a person at 5809 Garden Village Court, Apartment H, were digitally inquiring into the delivery status of Subject Package 4, confirmed to contain methamphetamine. Charter confirmed through subpoena response that the Charter IP in question was subscribed to Shaina Hunt and listed the service address and billing address as 5809 Garden Village Court, Apartment H, with the listed phone number of 910-785-9179. The IP subscribed to Hunt at 5809 Garden Village Court, Apartment H, inquired into the delivery status of Subject Packages 3 - 8 on multiple occasions between February 26, 2024, and April 7, 2024.

37. On April 20, 2024, Priority Mail package 9505 5123 7588 4110 3188 57 (Subject Package 9) was identified in transit to 226 Davidson Street, Archdale, North Carolina 27263. This package was later confirmed to be addressed from "Alexander Morales 9638 s 43rd Place Phoenix, AZ 85044," and addressed to "Janice whaley 226 Davidson st Archdale, NC 27263." A review of available law enforcement databases confirmed both names were fictitious and did not associate with either address.

38. On April 23, 2024, the Honorable United States Magistrate Judge L. Patrick Auld issued a search warrant (1:24 MJ 155) for 5809 Garden Village Court, Apartment H, Greensboro, North Carolina 27410.

39. On April 24, 2024, Inspector A. Pollard, acting in the capacity of an undercover USPS Letter Carrier, delivered Subject Package 9 to 226 Davidson Street, Archdale, North

13

Carolina 27263. Present for the surveillance operation was members of the USPIS, DEA, IRS-CI, Moore County Sheriff's Office, Randolph County Sheriff's Office, and the Archdale Police Department. FBI SA S. Kelley and DEA SA C. Miller conducted physical surveillance on the residence when Subject Package 9 was delivered to the front door.

40.     Approximately 52 minutes after Subject Package 9 was delivered to the front porch, Shaina Hunt was observed arriving at 226 Davidson Street, Apartment H, in her previously identified Nissan Sentra, North Carolina license plate: FHS4951. Hunt was observed retrieving Subject Package 9 from the front porch and placing it withing the Altima. Hunt then departed the area. Several minutes later, Hunt was stopped on I-85 North for illegal window tint. A canine indicated on her vehicle which led to the recovery and search of Subject Package 9. A space heater was located within the package and found to contain over 500 grams of suspected fentanyl pills. Hunt was found to be in possession of $925.00, as well as **TARGET DEVICE 1** and **TARGET DEVICE 2**.

41.     Members of the Randolph County Sheriff's Office later confirmed that while the traffic stop was occurring, Hunt was observed using **TARGET DEVICE 1** and **TARGET DEVICE 2**. Hunt used one of the devices to call a person believed to be her mother, stating "Mom, I'm about to get locked up. I am just letting you know." This statement was made prior to the location of any contraband within her vehicle. Hunt was also observed accessing a second cellular device, either **TARGET DEVICE 1** and **TARGET DEVICE 2**, and appeared to be sending a text message from the device. While this traffic stop was still underway, members of the USPIS and Moore County Sheriff's Department responded to 5809 Garden Village Court, Apartment H, in preparation of the residential search warrant.

14

42.     Hunt was taken into custody and transported to the Archdale Police Department. SA C. Miller and I conducted an interview of Hunt. Hunt was advised of her legal rights, which she acknowledged, and agreed to provide a statement without legal counsel present. Hunt denied any knowledge of what was inside of Subject Package 9. When asked why she picked up a package that was not addressed to her, at an address she does not reside at, Hunt refused to answer the question. Hunt advised she called her mother as soon as she realized she was being pulled over by law enforcement. Hunt later invoked her right to counsel and the interview was ended.

43.     As members of the investigative team were in transit to 5809 Garden Village Court, Apartment H, TFO T. Cheek observed a female, later identified as Kristen L. Hunt, walking through the apartment complex carrying a bag. K. Hunt approached 5809 Garden Village Court, Apartment H, at which time she was approached by TFO Cheek. K. Hunt advised she had been contacted by S. Hunt's boyfriend, identified as Crandall Ingram, and instructed to immediately go to S. Hunt's residence and remove several items from within. The bag that S. Hunt was attempting to enter the residence with was confirmed to be empty.

44.     Ingram was confirmed to currently be in custody of the Bureau of Prisons, having previously been sentenced to prison in the Middle District of North Carolina. It should be noted that S. Hunt was found to be in possession of multiple debit/credit cards, in Ingram's name, within her purse when she was stopped by law enforcement.

45.     Upon conducting a search of 5809 Garden Village Court, Apartment H, a large amount of evidence was identified and seized. This included approximately 682 grams of white powder that field tested positive for the presence of fentanyl, 4.5 pounds of marijuana, a loaded handgun, expensive jewelry, and two drug ledgers. Also located within the master bedroom

15

closet was a plastic bag tied shut. Located within this bag were other plastic bags and kilogram wrappers with tape. The plastic bags and wrappers were emanating a strong chemical odor.

46.     Also located at the residence were a large number of financial documents, to include tax records and money transfers. Hunt's 2023 W-2 was located within the residence, which reflected she earned $16,369.78 in wages, tips, and other compensation. A North Carolina Solicitation for Services form was in Hunt's residence, which listed a company of CMK Logistics LLC, 226 Davidson Street, Archdale, North Carolina 27263. The listed manager for the company, at 226 Davidson Street, was Crandall Ortais Ingram.

47.     Shaina Hunt is involved in an ongoing criminal conspiracy that involves Nicholas Curry and Cody Curry to distribute drugs through shipping companies, to include the USPS. Since February 2024, Hunt was using electronic devices, which is believed to include **TARGET DEVICE 1** and **TARGET DEVICE 2**, the 5809 Garden Village Court, Apartment H, to monitor and coordinate the shipment of packages suspected and confirmed to contain drugs. Hunt has also been found to be using 5809 Garden Village Court, Apartment H, to store and sell drugs from. It has been confirmed that a person(s) is using electronic devices/internet subscribed to Hunt, at 5809 Garden Village Court, Apartment H, to coordinate and plan the shipment of suspected and confirmed drug shipments to the Middle District of North Carolina.

48.     Based on my training, experience, and knowledge of this case, I know that drug traffickers regularly communicate utilizing cellular telephones, such as **TARGET DEVICE 1** and **TARGET DEVICE 2**, to coordinate drug transactions with drug customers and drug sources of supply. Additionally based on my training, experience, and knowledge of this case, I believe that Hunt is using **TARGET DEVICE 1** and **TARGET DEVICE 2** to coordinate drug

16

sales and drug shipments. It is my belief that Hunt will have communication within **TARGET DEVICE 1** and **TARGET DEVICE 2** regarding packages that contain drugs and/or money.

49.     Based on the information provided in this application, I submit there is probable cause to believe **TARGET DEVICE 1** and **TARGET DEVICE 2** will contain evidence of drug trafficking conducted by Hunt and co-conspirators both known and unknown to law enforcement. **TARGET DEVICE 1** and **TARGET DEVICE 2** are currently in storage at the Moore County Sheriff's Office, 302 South McNeill Street, Carthage, North Carolina 28327. In my training and experience, I know that **TARGET DEVICE 1** and **TARGET DEVICE 2** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when **TARGET DEVICE 1** and **TARGET DEVICE 2** first came into the possession of the USPIS.

<u>**TECHNICAL TERMS**</u>

50.     Based on my training and experience, I use the following technical term to convey the following meaning:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

17

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

51.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

52.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **TARGET DEVICE 1** and **TARGET DEVICE 2** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **TARGET DEVICE 1** and **TARGET DEVICE 2** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

18

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

53.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **TARGET DEVICE 1** and **TARGET DEVICE 2**, consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **TARGET DEVICE 1** and **TARGET DEVICE 2** to human inspection in order to determine whether it is evidence described by the warrant.

54.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

19

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

55.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **TARGET DEVICE 1** and **TARGET DEVICE 2** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Jordan Wicks
Jordan Wicks
U.S. Postal Inspector
U.S. Postal Inspection Service

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 6th day of May, 2024, at 8:05 a.m.

Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina

20

## <u>ATTACHMENT A</u>

The property to be searched is as follows:

**TARGET DEVICE 1** and **TARGET DEVICE 2** at the Moore County Sheriff's Office,

302 South McNeill Street, Carthage, North Carolina 28327. This warrant authorizes the forensic

examination of **TARGET DEVICE 1** and **TARGET DEVICE 2** for the purpose of identifying

the electronically stored information described in Attachment B.

    a. **TARGET DEVICE 1**: A black Samsung Galaxy S9, S/N: R38K60MTC8R.



b. **TARGET DEVICE 2**: Apple iPhone with pink and gold case.



2

## ATTACHMENT B

56.     All records on **TARGET DEVICE 1** and **TARGET DEVICE 2** described in Attachment A that reference or reveal violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to do the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering) and involve Shaina Hunt:

      a. Electronic communications between Hunt and co-conspirators both known and unknown;

      b. lists of customers and related identifying information;

      c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      e. all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned **TARGET DEVICE 1** and **TARGET DEVICE 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.